IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MISSOURI

EASTERN DIVISION

|  |  |
|---|---|
| RAYETTE P. SCRUGGS | )                    JURY TRIAL DEMANDED |

RAYETTE P. SCRUGGS               )                   JURY TRIAL DEMANDED

                                     )

                                     )

PLAINTIFF                      )    Case No.

                                     )

                V.            )    .

                                     )

 RBC (USA)                     )    COMPLAINT FOR  COMPENSATORY DAMAGES ,

Serve Registered Agent:         )    PUNITIVE DAMGES, AND ATTORNEYS FEES

                                     )    FOR INTENTIONAL MISREPRESENTATION IN

John B. Fleming Jr.               )    THE INDUCMENT OF A   WRITTEN AGREEMENT-

301 Fayetteville Suite 1400     )    NOTE AND DEED OF TRUST EXECUTED 12-28-04;

Raleigh, North Carolina 17601-1738 )    CLASS ACTION FOR VIOLATION OF THE

                                     )    MISSOURI MERCHADISING PRACTICE:  UNDER

RBC Mortgage  Company        )    407.020 RSMO ET SEQ.  COMPENSATORY,

Serve: CT Corp.                )    PUNITIVE DAMAGES, AND ATTORNEYS FEES

     120 South Central        )    AGAINST RBC MORTGAGE COMPANY, RBC

     Clayton, MO 63105      )    USA, AND CHESTERFIELD MORTGAGE LLC;

                                     )    CLASS ACTION FOR VIOLATIONS OF  THE

CHESTERFIELD MORTAGE LLC   )    MISSOURI MERCHANDISING  PRACTICES ACT

Serve: Fay K. Mueller         )    UNDER SEC. 407.020 ET. SEQ. AGAINST

     14226 Ladue Road       )    TITANIUM SOLUTIONS INC. AND CHASE HOME

     Suite 017              )    FINANCE LLC; CLASS ACTION FOR VIOLATION

     Chesterfield MO 63017    )    OF  RESPA (12 U.S.C. SEC. 2601 ET SEQ.) AND

                                     )    VIOLATION OF HOPA (12 U.S.C. SEC. 4901 ET

                                     )    SEQ.) AGAINST CHASE HOME FINANCE LLC.

CHASE HOME FINANCE LLC     )    CLAIM FOR RELIEF FOR ACCOUNTING

Serve: CT Corp.                )    AGAINST CHASE HOME LOANS LLC

     120 South Central        )

     Clayton, MO 63105      )

                                     )

TITANIUM SOLUTIONS, INC.    )

 Serve:  CSC Lawyers Incorporated  )

       221 Bolivar           )

       Jefferson City, MO

### JURISDICTION, VENUE, AND PARTIES

1. This Honorable Court has jurisdiction under Sec. 28 U.S.C. Sec. 1331 as federal questions are presented under the Home Owners Protection Act, 12 U.S.C. 4701 et seq.; the Real Estate Settlement Practices Act, 12 U.S.C. Sec. 2601 et seq.; this Honorable Court has Supplemental Jurisdiction over the state law claims for relief under 28 U.S.C. Sec. 1367 (a).

2. Venue is appropriate in the Eastern Division of this District under 28 U.S.C. 1391 (b) and Local Rule 3-207 as a substantial portion of the events took part in St. Louis County, Missouri; all defendants are subject to the personal jurisdiction of this Court in that all Defendants herein either maintain registered agents for the service of process in Missouri, did business in the Eastern District of Missouri, entered into contracts and or committed torts in the Eastern District of Missouri

3. At all times herein mentioned, Plaintiff Rayette P. Scruggs was and is a resident of the County of St. Louis and entered into a note and deed of trust with RBC (USA) (successor to RBC Centura Bank) Mortgage on December 28, 2004 in the County of St. Louis for a condominium property located at 2065 Carefree Lane, Florissant, Missouri, 63033.

4. The claims for relief for intentional misrepresentation and violations of the Missouri Merchandising Practices Act Sec. 407.010 et seq. accrued against RBC Mortgage Company; RBC (USA) and Chesterfield Mortgage LLC Defendants in the County of St. Louis on 12-28-04 when the note and deed of trust were entered into and recorded and where the real property secured by the Deed of Trust is located.

5. The Claims for Relief Against Chase Home Finance LLC. and Titanium Solutions Inc. for Violations of the Missouri Merchandising Practices Act, 407.010 et seq. accrued on or before February 1, 2009; the

claims for relief  under the  Real Estate Settlement Practices Act (12 U.S.C. Sec. 2601 et seq.) accrued   on

or about May 20, 2009 and for violations of the Home Owners Protection Act (12 U.S.C.  Sec. 4901 et.

seq.) against Chase Home Finance LLC accrued on or after 12-31-2007 in St. Louis County, Mo.


6. Defendant   RBC (USA) is a corporation duly organized and existing by virtue of law in the State of

Delaware with its principal place of business in Chicago, Illinois. It is a successor corporation to RBC

Centura Bank which   made a loan secured by Plaintiff's residence and thus transacted business in the State

of Missouri  by entering into a contract in Missouri. At all times herein mentioned it was an agent of Royal

Bank of Canada, acting in the course and scope of its agency.


7. Defendant  RBC Mortgage Company was involuntarily dissolved and is no longer qualified to do

business  in the State of Missouri or the State of Illinois ,its headquarters.  However, its status is listed as

suspended in North Carolina. Plaintiff's counsel has verified with CT Corporation Systems in Clayton,

Missouri that CT Corporation Systems is still authorized to accept service of process for that entity. The

United States Attorney for the Northern District of Illinois obtained criminal convictions against RBC

Mortgage Company's employees and agents in the United States District Court for   Northern District of

Illinois Case No. 06-50449 and a consent judgment for 17.5 million dollars which RBC (USA) paid to the

United States of  America for the fraudulent acts of RBC Mortgage agents in the United States in

connection with loans guaranteed by entities of the United States.  At all times herein mentioned; RBC

Mortgage Company and its agents, servants and employees  acted within the course and scope of its agency

both as an originator of loans for  RBC (USA) and  also as agents for Royal Bank of Canada. At all times

herein mentioned it did business in the State of Missouri by entering into a contract with Ms. Scruggs and

committing torts   against Ms. Scruggs.

8. Defendant Chase Home Loans LLC is a Delaware business entity, with its principal place of business in Columbus, Ohio. Shortly after inception of the loan, on or about April, 2005; RBC transferred and assigned at least the servicing rights of the loan if not the loan itself to Chase Home Loans LLC. Chase Home Loans LLC does business in the State of Missouri.

9. At all times herein Chase Home Loans LLC authorized Titanium Home Solutions or Titanium Home Solutions had apparent authority as Chase Home Loan LLC's agent to in violation of Sec. 473.001 RSMo et seq. act as a mortgage broker in the State of Missouri and solicit Ms. Scruggs and others with acts of predatory lending including soliciting loans which would pay off the existing loan serviced by Chase LLC on Ms. Scrugg's residence.

10. Chesterfield Mortgage LLC was never qualified to act as a mortgage brokers in the State of Missouri, yet RBC (USA) and RBC Mortgage authorized Chesterfield Mortgage and its employee, Tom Puettnamm to originate loans for RBC (USA) through its agent RBC Mortgage. At all times as alleged herein all the acts and omissions of Puettnamm and Chesterfield Mortgage LLC were in the course of and scope of Puettnamm's actual and apparent authority for Chesterfield Mortgage LLC; RBC Mortgage Company and RBC (USA).

**FIRST CLAIM FOR RELIEF- DAMAGES FOR INTENTIONAL MISREPRESENTATION-AGAISNT RBC (USA), RBC MORTGAGE, AND CHESTERFIELD MORTGAGE LLC.**

11. Plaintiff repeats and realleges all the allegations of paragraphs 1-10.

12.  Tom Puettnamm acting within the course and scope of his agency solicited a loan from Ms. Scruggs with respect to her purchase of  a house secured by a loan and deed of trust from RBC (USA) and RBC Mortgage located at  2065 Carefree Lane, Florissant Mo.

13. Puetnamm knew from his course of prior dealings that RBC (USA) and RBC Mortgage would
 not make any mortgage loan, especially a loan such as the subject loan here with a $500.00 down payment without requiring  Private Mortgage Insurance (hereafter PMI)  and knowing it was false and with the intention  of Ms. Scruggs  relying on  these representations represented in  the  course of his  actual and apparent authority  with RBC Mortgage Company and  its employees  that a mortgage loan could be made without PMI.

14.  RBC (USA) and RBC Mortgage Company had through their prior course of  business  authorized  and, indeed,  encouraged Puettmann to provide Ms. Scruggs with written representations as to the monthly payments without purchase mortgage insurance (PMI) and then bait and switch and require PMI at closing.

15.   Puettmann represented orally and   by means of a  "Good Faith Estimate" that Ms. Scruggs could obtain a loan annual percentage  rate of  7.5% with payments of $488.75  a month on a principal balance of $69,000.00 with a down payment of merely $500.00. See Exhibit A. Omitted twice from this "Good Faith Estimate" were any amounts due for private mortgage insurance (hereafter PMI).

16. Puettmann knew that with   a $500.00 down payment on a $69,000 loan; that  Private  Mortgage Insurance (hereafter PMI) would be required and that would increase the monthly payment to $638.75 and Puettmann knew further based upon the financial information obtained from Ms. Ms. Scruggs that Ms. Scruggs  could not afford the payments with PMI and that Ms. Scruggs had filed for bankruptcy.

17. Puettmann made the representations orally and in writing in concert with RBC Mortgage employees; both Chesterfield Mortgage and its President of its Equity Lending Group Puetmann as well as the RBC Mortgage employees knew the representations to Ms. Scruggs were false and with the intent that Ms. Scruggs rely on same and then Ms. Scruggs would come to close the loan on the date required by her contract for purchase, and be forced to accept the Loan despite the significant increase in monthly payments.

18. Chesterfield Mortgage LLC, RBC Mortgage Company and RBC (USA) had a duty to speak truthfully and not omit material facts and accurately fill out loan applications in the course and scope of soliciting mortgage loans, offering good faith estimates of the terms of such loans and in closing such loans.

19. Such misrepresentations were material in that the annual percentage rate and addition of PMI payments would be significant to any consumer as the falsity of such misrepresentations would inevitably increase the monthly payment.

20. Ms. Scruggs did not know that the misrepresentations were untrue, had a right to, and justifiably relied on such representations such statements as true as they were made orally and in writing in light of the fact that she had been referred by her Coldwell Banker agent, and told that Chesterfield Mortgage LLC and Chesterfield Mortgage LLC were "reputable mortgage brokers".

21. In fact, according to Records of the Missouri Division of Finance, Chesterfield Mortgage LLC was not on 12-29-04 licensed as a "mortgage broker" in accordance with Sec. 443.487 RSMo, had a duty not to solicit or make mortgage loans imposed by the regulations of the State of Missouri contained in 20 CSR 1140-30.010 and 20 CSR 1140-30.020; refrain from the fraudulent, unfair, deceptive and misleading acts

and omissions specified above under 20 CSR 1140-30.070; 30.080; 30.090; and these facts that would be material to any consumer were concealed and suppressed.

22. Ms. Scruggs  justifiably relied on the representations as she was bound by her real estate contract to close no later than 12-29-04  and was compelled to close on her loan to not breach her contract for the purchase of the residence.

23. In fact, when Ms. Scruggs appeared at the closing on December 28, 2004  she was presented with new loan documents that provided for a loan with PMI with and  payments of  $660.75 and was forced to close on such loan to comply with the deadline for closing in her contract for the purchase of the residence. See Exhibit B "Federal Truth-In-Lending Disclosure Statement"

24. The  misrepresentations were made knowing that the facts were false, with willful, wanton, and malicious as  Puellmann and RBC Mortgage Company employees knew based upon underwriting guidelines including the fact that no down payment was made that PMI would be required  but failed to disclose the PMI and  pulled a "bait and switch" at the closing on December 28, 2004.

25. As a direct and proximate result of the fraudulent misrepresentations made by Puehlmann in the course and scope of his agency for  Chesterfield Mortgage LLC, authorized or with the apparent authority of defendants RBC(USA) and RBC Mortgage, Ms Scruggs entered into a note and first deed of trust under which she has made excess payments of $12,000 during 2004 through 2008.

26. RBC(USA) and RBC Mortgage's predecessor entity (Prism Mortgage) had a pattern and practice of its agents making such fraudulent loans with false documentation such that its employees including Torossian were convicted in the United States District Court for the Northern District of Illinois in Case No. 06-50049

See Exhibit C Department of Justice Release Dated: December 17, 2007. RBC  entered into a Consent

Judgment with the United States in which it paid $10, 715,000.00 to the United States for falsification of

loan documents in connection with loans insured by federal entities See Exhibit D Department of Justice

Release Dated November 25, 2008.

27. As part of this same course of conduct, Puehlmman, Chesterfield Mortgage, RBC Mortgage and RBC

(USA) filled out false loan application forms which had been signed in blank by Ms. Scruggs on December

3, 2004, based upon a phone interview in which Ms. Scruggs disclosed her bankruptcy and  knew or should

have known that such documents were false based upon standard underwriting procedures such as running

credit reports on all loan applicants, and failed to obtain any income tax returns to verify Ms. Scruggs

income until after closing, if at all. See Exhibit E-Puellmann Fax of December 13, 2004 With Original

Documents Signed by Ms. Scruggs on December 3, 2004

Wherefore Plaintiff Scruggs seeks compensatory damages of $30,000, punitive and exemplary damages of

$90,000, together with interest thereon at 9% per annum from the date of overpayment against RBC

Mortgage; RBC (USA), and Chesterfield Mortgage LLC.

## SECOND  CLAIM FOR RELIEF-MISSOURI MERCHANDISING PRACTICES ACT AGAISNT RBC (USA), RBC MORTGAGE, and CHESTERFIELD MORTGAGE LLC.

28. Plaintiff  Rayette P. Scruggs repeats and realleges all the allegations of Paragraphs 1 through 27.

29. Sec 407.020. 1. RSMo prohibits "The act, use or employment by any person of any deception, fraud,

false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or

omission of any material fact in connection with the sale or advertisement of any merchandise in trade or

commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice. The use by any person, in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri of the fact that the attorney general has approved any filing required by this chapter as the approval, sanction or endorsement of any activity, project or action of such person, is declared to be an unlawful practice. Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

30. Defendants are a duly organized Missouri or foreign  corporations  who were in the business of making, brokering or participating in home loans upon pledges in the State of Missouri.  The home loans are extensions of credit for the purchase of residential property; others are extensions of credit to refinance existing debt or for a line of credit.  Each of these transactions is secured by a deed of trust (or mortgage) on the borrower's residence, and is effected by various instruments and documents including a promissory note and a deed of trust (or mortgage).

31. Defendants, as a general business practice, reflecting a "bait and switch scheme" would first offer borrowers a loan without  Private Mortgage Insurance  to induce them to enter into a note secured by a deed of trust without Private Mortgage Insurance and then at closing demand  PMI which would materially  increase the Annual Percentage Rate relating to the loan or extension of credit being made to the borrower.

32. This action is brought by Borrower against Defendants to recover for herself and for all others similarly situated (hereinafter, the "Plaintiff Class") all  PMI paid by Borrower and the Plaintiff Class to Defendants.

33. It is unlawful under Missouri law for Defendants to charge or collect from borrowers PMI as part of a "bait and switch" scheme. Thus, Defendants(s) are legally obligated to refund to Borrower, and to the others members of the Plaintiff Class, all PMI payments charged and collected by Defendant(s) on transaction within the State of Missouri, and to pay in addition statutory treble damages and costs.

34. On December 28, 2004, Borrower borrowed money to finance the purchase of a home at 2065 Carefree Lane in Florissant, MO.

CLASS ACTION ALLEGATIONS

35. The use of a bait and switch in which loans are first offered a loan without PMI and then at closing PMI is demanded is fraudulent, false, deceptive, a false pretense and misleading and concealment or suppression within the meaning of 407.010 and numerous other regulations set forth in the regulations of the State of Missouri promulgated by the Missouri Attorney General at 15 CSR 60-9.020 (deception); 15 CSR 60-9.040 (fraud); 15 CSR 60-9.060) (false promise); 15 CSR 60-9.080 (material) 15 CSR 9-100 (fraudulent misrepresentations; and 15 CSR 9.110 ( Concealment and Suppression)

36. Borrower proposes to represent a Plaintiff Class consisting of all persons who were charged by and paid to Defendants or their assignees PMI in connection with a real estate financing transactions within the State of Missouri for a period beginning five years before the filing of this action to the present.

37. On information and belief, the Plaintiff Class consists of many hundreds , if not thousands, of individuals, and the members of Plaintiff Class are so numerous that it is impractical to bring all of them before the Court in this action. Moreover, the amount of damages suffered by each member of the proposed Plaintiff Class is so small that it would be impractical for each borrower to bring an individual action and such individuals do not have the economic resources to pursue such an action.

38. There are common questions of law and fact applicable to the claims asserted on behalf of the Plaintiff Class. Those questions include whether demanding PMI at closing of the transaction after making a "good faith" estimate that PMI is not required is a violation of 407.010 et seq. in that whether PMI is required is readily ascertainable based upon the information required to be included in a Loan Application by Mortgage Brokers and lenders and the standard credit check performed by same at the time of processing the loan application by Mortgage Brokers in accordance with Sections 443.800 through 443.893 and the Regulations promulgated under the authority of those statutes including 20 CSR 1140-30.080; 20 CSR 1140-30.090; and 30 CSR 1140-30.100.

39. Proposed lead counsel for the Plaintiff class, L. Steven Goldblatt is experienced and knowledgeable concerning this type of litigation, having prosecuted over 20 civil and criminal cases under the MMPA including class actions as an Assistant Attorney General for the State of Missouri, has defended class action litigation in state and federal court, has sufficient resources and will fairly and adequately represent the interests of the proposed Plaintiff Class.

40. Common questions of law and fact common to the members of the proposed Plaintiff Class predominate over any questions of fact affecting any individual member of the proposed Plaintiff Class, and a class action is superior to other available methods for the fair and efficient resolution of this controversy. No unusual difficulties are anticipated in the management of this case as a class action.

Wherefore Plaintiff prays that a class limited to those residents of the State of Missouri at the time of loan closing be certified under Sec. 407.020 RSMo and Fed R. Civ. Pro. Rule 23; that L. Steven Goldblatt be appointed Lead Counsel and for compensatory, punitive damages, and attorneys fees according to proof.

**THIRD  CLAIM FOR RELIEF- VIOLATION OF MISSOURI MERCHANDISING ACT AGAINST**

**CHASE HOME LOANS LLC AND TITANIUM SOLUTIONS INC**.

41.  Plaintiff   Rayette P. Scruggs repeats and realleges all the allegations of Paragraphs 1 through 40 of the

Complaint   and alleges as follows:


42. On or after January 1, 2009   Plaintiff  Scruggs herself and through  her attorney demanded  in writing

among other matters an accounting of all amounts due under their respective  notes and deeds of Trust, the

notes and deeds of  Trust  and a modification of her loans and supplied all financial information requested

by Chase.


43. Chase Homes LLC and its agent, servants and representative have failed and refused to provide

an accounting of all amounts due, the notes, the deed of trusts, and have engaged in a course of false

statements, deceptive practices, misleading statements to Plaintiff and the general public  all of which are

material to any homeowner who wants to preserve their homeownership in violations of 407.010 et seq.


44. Chase Home Finance LLC  by and through its agents  Vanity Jones represented  on February 17, 2009

that Ms Scruggs  request for a workout option had been denied due to "failure to respond to requests for

communication and/or documentation." This statement was false. Exhibit F-Chase Letter

.

45.  Chase Home Loan Services used a "financial intermediary" Titanium  Solutions  not licensed by the

State of Missouri  as a mortgage broker to solicit Ms. Scruggs. On   February 13, 2009   Titanium

Solutions  solicited Ms. Scruggs in a letter of that date bearing the Titanium Solutions Letter letterhead

stated that "Titanium Solutions is contacting you on behalf of  Chase to discuss various options to preserve

your homeownership"  Exhibit G- February13, 2009  Titanium Letter on Behalf of Chase.

46. On February 16, 2009, Deborah Sweet taped a Titanium Solutions business card on behalf of

defendant Chase and stated "Please Call Me Its Important & It May Be Good News For You"

See Exhibit H-Sweet Business Cards and Message.


47.  Ms. Sweet solicited without being a licensed Mortgage broker or being employed by a licensed

Mortgage broker in Missouri and  induced Ms. Scruggs by fraudulent representations, deception, false

promises, within the meaning of 407.010 and   numerous other regulations set forth in the  regulations of

the State of Missouri promulgated by the Missouri Attorney General at 15 CSR 60-9.020 (deception); 15

CSR 60-9.040 (fraud); 15 CSR  60-9.060) (false promise); 15 CSR 60-9.080 (material) 15 CSR 9-100

(fraudulent misrepresentations; and 15 CSR 9.110 ( Concealment and Suppression) induced  Ms. Scruggs

to  complete and fax a Titanium Solutions  Financial Information form  containing personal and

confidential information. Exhibit I- Fax on  2-25-09 By Ms. Scruggs With Titanium Solutions Financial

Information Form Listing "Lender's Name:Chase" and Ms. Scruggs Chase Loan Number.


48. On February 11, 2009 , Mr. Jamie P. Dimon testifying under oath before the House Financial Services

Committee   In response to a question from Congressman Castle, Mr.  Dimon  stated under oath:


Mr. CASTLE. I assume, of all the commercial banks here, that you
are    in the same basic position; if you talk to the people, you will
try   to work out a plan to help them with their foreclosure circumstances.
You all represent large, pretty well-capitalized entities
that,  according to your reports today, are doing reasonably well.
But I am more concerned about the mortgages that were created
By  mortgage banks that are no longer in business and perhaps
have  been assigned to or sold to other entities at this point and
which  are going to be true foreclosures.
Do any of you have any ideas about what we, as a government,
Should  be doing to help in those circumstances? And I appreciate
What  you are doing individually as companies.

Mr. DIMON. I think one of the legitimate issues is that people,
if they don't know who their servicer is and they don't know who
to call, that there are some great ways to modify loans. We should

find ways to make sure that all loans are modified that way. And
we have shared with the Treasury, the FDIC, the OCC, which several
banks here have best practices, and we think that everyone
should follow its best practice, and we will do the best job we can
for everybody. It has been haphazard in the last year.
.

Hearing Before The  United States House of Representatives Committee on Financial Services February

11, 2009 Page 32.  See Exhibit J

49. On March 16, 2009, counsel sent a letter priority mail confirmation receipt to Chase Home Loan

Service which  constituted a "qualified demand" and contained all the financial information requested  by

defendant  Chase. Exhibit K Letter to Chase Home Finance, P.O Box 24696, Columbus Ohio-43224-0696

Confirmation Receipt-Enclosures

50. To date, neither    Counsel,   nor Mrs. Scruggs   have  received one letter from defendant Chase in

response to the March 16, 2009 letter which was received by Chase at the address indicated by the U.S.

Postal Service.

51. On February 11, 2009 Mr. Jamie Dimon stated in response to a question from   Congresswoman Capito.

Mrs. CAPITO. Thank you, Mr. Chairman. I would like to thank
the gentleman.
I have two questions, I hope, in the time I have allotted.
I have several constituents I have heard from. We all have heard
from constituents about the credit card debt issue. One gentleman,
a minister, 77, holds a Chase card. His rate has just been jacked
up on him. He now thinks he has to get a second job to be able
to pay for his medicines. He never missed a payment. He is not delinquent
on anything.
Another is a woman who had a Citigroup card for 14 years. She
never missed a payment. She called Citigroup and they said, you
have never abused your account; we are not going to raise your interest
rate. Her interest rate was raised from 6.74 to 24.99 percent.
Her payments now—she doesn't pay her whole balance, obviously,
every month, but she has never missed a payment in 14 years.
These folks feel—and I think that when I saw Citigroup's, your
report to Congress, you mentioned here since receiving the first in-stallment of TARP,
 Citi has made plans to expand its lending activities
further and extend affordable credit to lower-risk borrowers.

Well, that is not what I am hearing from my constituents.
Can you please help me with this and help them? Because they
feel that their good credit and their good faith and their good practices,
that it is on the backs of them not only as taxpayers but also
as creditors, they are being asked to pay more:.

Mr. DIMON. Congresswoman, I think, first of all, JPMorgan
Chase tries to uphold the highest standards, and several years ago
we got rid of universal default, double-cycle building. Universal default
allows you to raise rates on someone for something like a
change in a FICO score. There are very limited rate increases.
There are rate decreases. So both take place, but they are very
limited. And whenever we hear about a circumstance like this, if
we did the wrong thing, we should fix it. Send it to me, and we
will take care of it. Sometimes I hear this and the facts aren't what
you were told.
Mrs. CAPITO. Well, I think we are hearing it across the country.
Mr. DIMON. Well, send them all to me, and we will deal with
them one by one, and we will treat the client in the proper and appropriate
way.
Mrs. CAPITO. Thank you for your response.

Id. pp.40-41


52. In reliance upon the statement of Mr. Dimon and in an attempt to reach some responsible party at

Chase; this counsel sent on June 17, 2009   a letter directly to Mr. Dimon and Mr. Steven Cutler, General

Counsel for JPMorgan Chase via Priority Mail Confirmation Receipt  Morgan Chase on June 17, 2009

enclosing the prior letter with enclosures  and asking for a response. See Exhibit L June 17, 2009 Letter to

Jamie P. Dimon   and  Steven Cutler with Proof Of Delivery To Same.


53. Counsel  and Mrs. Scruggs have not  received any response from JP Morgan Chase or Chase Home

Finance LLC. or any contact with a representative of Chase regarding any matter contained in the March

16, 2009 or June 17, 2009 letter.


54. Instead Chase has refused to respond to communications; has released confidential financial and

identifying consumer information including names, and addresses, and loan status to third parties, such as

Titanium Solutions, who have solicited predatory loans, from Ms Scruggs,

55. Such statements were material in that any reasonable homeowner would rather cooperate with third-party entities such as Titanium who expressly set forth in writing that such third-party entity represents their loan servicer and effect a voluntary loan modification, than risk foreclosure or resort to the costs and uncertainties of litigation. This is highlighted by the testimony under oath by Mr. Dimon to the House Financial Services Committee in which Mr. Dimon stated that JP Morgan Chase would use its "best practices"

56. Ms. Scruggs and her counsel had a right to rely on testimony made under penalty of perjury by the Chief Executive Officer of JPMorgan Chase, were ignorant of the falsity of such representations; and continued to believe that Chase would contact them.

57. Instead, on or about Thanksgiving Day, 2009 Ms. Scruggs received a Notice of Sale on her property for January 6, 2010. Exhibit M

58. Counsel immediately sent a letter to local counsel and the collection firm asking that the foreclosure sale be continued and that copies of the letter be sent to Chase Home Loan Services LLC. After communicating with local counsel and the collection firm retained by Chase, due to the ethical and professional conduct of such firm South and Associates and their local counsel, the sale was continued. See Exhibit N- Goldblatt Letter and Exhibit O-Hick Letter

59. On December 13, 2009, Chase Home Finance LLC sent a letter to Ms. Scruggs which was received by Ms. Scruggs on December 19, 2009 which stated "Chase Home Finance LLC is informing to write you that we have not received all documents necessary to complete your request for a modification". Further, the letter requests "Two 2 Copies of the Trial Plan signed by all borrowers". Exhibit P

60. In light of Exhibits K and L, verified to be sent and received by the United States Postal Service to Chase Home Finance LLC and the Chief Executive Officer and General Counsel of JP Morgan Chase the

December 13, 2009 Chase Home Finance  Letter is false, fraudulent, deceptive and misleading; and reflects willful and wanton disregard of Ms. Scruggs rights and Chase Home Finance LLC and Titanium Solutions acts and omissions as set forth above are  willful, wanton and malicious. Ms. Scruggs has furnished all information required by Chase repeatedly.

61. As a direct and proximate result of the foregoing misrepresentations, Ms, Scruggs has been assessed continuing late fees, increased interest charges due to PMI being included in the amount of $30,000.

## CLASS ACTION ALLEGATIONS

62. The continued representations by Chase  that it is ready, willing and able to commence loan modifications while disclosing private customer authorization including loan status, loan number, to unauthorized third parties to solicit predatory loans is fraudulent, false, deceptive, material,  a false pretense and misleading and concealment or suppression within the meaning of 407.020 and   numerous other regulations set forth in the  regulations of the State of Missouri promulgated by the Missouri Attorney General at 15 CSR 60-9.020 (deception); 15 CSR 60-9.040 (fraud); 15 CSR  60-9.060) (false promise); 15 CSR 60-9.080 (material) 15 CSR 9-100 (fraudulent misrepresentations; and 15 CSR 9.110 ( Concealment and Suppression)

63. There   are common   questions of law or fact that predominate as to whether these practices violate Sec. 407.020 RSMo:

a) Whether Chase and its representatives have a pattern and practice of refusing to respond to customer communications;

b)  Whether Chase and its representatives have a pattern  and practice of sending letters containing false statements of fact that Chase has failed to receive such documentation despite proof that such documentation has been received by not only by Chase but by the officers of its parent corporation J.PMorgan Chase;

c.) Chase and its  employees have a pattern and practice of soliciting such loan modifications, repeating representing to customers that they are ready, willing  and able to use the  best  practices  and the highest standard, yet persistently falsely claim to fail to  receive financial information, and other documents; and then foreclose on the customer;

d.) Whether  Chase and its employees have a pattern or practice of disclosing confidential financial information  of its  customers to  unauthorized third parties not licensed to solicit loans in the State of Missouri, and whether the solicitation of such loan amounts to a practice of Chase Home Finance LLC using agents, such as Titanium Solutions Inc. predatory  loans from its customers, to insulate Chase Home Finance LLC from liability.

e.) whether in light of **Cuomo v. Clearing House Association LLC**. United States Supreme Court No. 08-453 ( June 29, 2009) the Missouri Merchandising Practices Act (Sec. 407.020 et seq.) is preempted by any United States statute or regulation promulgated under such authority.


64.  Ms. Scruggs proposes to represent  one Plaintiff Class consisting of all persons in Missouri who were solicited  to make mortgage loans by  Titanium Solutions and /or other third parties  whose loan status, loan number  and name and address were disseminated to Titanium Defendants/and other third parties  by Chase without express authorization and/ or notification  to the customer in connection with a real estate financing transaction within the State of Missouri for a period beginning five years before the filing of this action to the present; and whether such practice constitutes violations of the Missouri Merchandising Practice Act.


65. On information and belief, the Plaintiff Class consists of many hundreds if not thousands of individuals, and the members of Plaintiff Class are so numerous that it is impractical to bring all of them before the Court in this action.  Moreover, each member of the proposed Plaintiff Class is in such a  financial condition that each member of the class would find it impossible, if not improbable to obtain counsel and would be impractical for each borrower to bring an individual action.

66. Proposed   lead counsel for   the Plaintiff class, L. Steven Goldblatt is   experienced and knowledgeable concerning this type of litigation, having prosecuted over 20 civil and criminal cases under the MMPA including Class Actions as an Assistant Attorney General for the State of Missouri, and having defended class action litigation in state and federal court.  Further, L. Steven Goldblatt has successfully negotiated Loan Modification Agreements with other lenders, has sufficient resources to represent the Class   and has presented  a seminar on Loan Modifications to the Commercial Law Committee of the Missouri Bar   and will fairly and adequately represent the interests of the proposed Plaintiff Class.

67. Common questions  of  law  and fact common to the members of the proposed Plaintiff Class predominate over any questions of fact affecting any individual member of the proposed Plaintiff Class, and a class action is superior to other available methods for the fair and efficient resolution of this controversy.  No unusual difficulties are anticipated in the management of this case as a class action.

Wherefore Plaintiff prays that a class limited to Missouri residents at the time of the solicitation   be certified under Sec. 407.020  RSMo and Fed. R. Civ. Pro Rule 23, that L. Steven Goldblatt be appointed lead counsel, and for compensatory, punitive damages, civil penalties, and attorneys fees according to proof.

**FOURTH CLAIM FOR RELIEF-CLASS ACTION- REAL ESTATE SETTLEMENT PRACTICES ACT 12 U.S.C. Sec. 2601  ET SEQ. AGAINST CHASE HOME FINANCE LLC.**

68. Plaintiff repeats and realleges Paragraphs 1-67.

69. 12 U.S.C. 2605 (e) requires each covered mortgage  servicer, such as Chase LLC to respond to a qualified demand:

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period. (B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that -

(i) includes, or otherwise enables the servicer to

identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of

the borrower, to the extent applicable, that the account is

in error or provides sufficient detail to the servicer

regarding other information sought by the borrower. (2) Action with respect to inquiry Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall -

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes -

(i) to the extent applicable, a statement of the reasons

for which the servicer believes the account of the borrower

is correct as determined by the servicer; and

(ii) the name and telephone number of an individual

employed by, or the office or department of, the servicer who

can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes -

(i) information requested by the borrower or an explanation

of why the information requested is unavailable or cannot be

obtained by the servicer; and

(ii) the name and telephone number of an individual

employed by, or the office or department of, the servicer who

can provide assistance to the borrower. (3) Protection of credit rating During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer

70. Counsel on behalf of Ms. Scruggs made such a "qualified demand" on March 16, 2009. See Exhibit E.

71. Chase has failed to respond in compliance with 12 U.S.C   Sec. 2605 (e)

72. Counsel sent a copy of the "qualified demand" represented by Exhibit E to the Chief Executive Officer of JPMorgan  Chase and its General Counsel  30 days after the response was due and to  date there still has been no response.  Exhibit L

73.  There  are common  questions of law or fact that predominate as to whether these practices violate 12 U.S.C  Sec. 2605 (e)  and 12 U.S.C. 2605 (f):

a) Chase and its representatives have a pattern and practice of refusing to respond to customer communications; including qualified RESPA demands;

b) J.P Morgan Chase and its Chief Executive Officer Jamie P. Dimon and its General Counsel are aware of the custom and  practice of Chase Home Finance LLC failure to respond to "qualified demands" under RESPA , or in the exercise of due diligence, should be aware of the practice.

74.  Ms. Scruggs proposes to represent   one Plaintiff Class consisting of all persons in Missouri whose RESPA "qualified demands" were not responded to in  accordance with  RESPA in the State of  Missouri from January, 1, 2009 to December 31, 2009.

75. The Plaintiff Class consists of many hundreds if not thousands of individuals, and the members of Plaintiff Class are so numerous that it is impractical to bring all of them before the Court in this action. Moreover, each member of the proposed Plaintiff Class is in such a  financial condition that each member of the class would find it impossible, if not improbable to obtain counsel and would be impractical for each borrower to bring an individual action.

76. Proposed   lead counsel for  the Plaintiff class, L. Steven Goldblatt is  experienced and knowledgeable concerning this type of litigation, having prosecuted over 20 civil and criminal cases under the MMPA as an Assistant Attorney General for the State of Missouri, having defended class action litigation in state and federal court.  Further, L. Steven Goldblatt has successfully negotiated Loan Modification Agreements with other lenders, has sufficient resources to represent the Class, and has presented a seminar on Loan Modifications to the Commercial Law Committee of the Missouri Bar, and will fairly and adequately represent the interests of the proposed Plaintiff Class.

77. Common questions  of  law  and fact common to the members of the proposed Plaintiff Class

predominate over any questions of fact affecting any individual member of the proposed Plaintiff Class,

and a class action is superior to other available methods for the fair and efficient resolution of this

controversy.  No unusual difficulties are anticipated in the management of this case as a class action.


Wherefore Plaintiff prays that a class be certified under Fed. R. Civ. Pro Rule 23, that L. Steven Goldblatt

be appointed lead counsel, and for statutory damages of $1000.00 per class member and an additional

amount of $1000 per class member and an  additional  $500,000.00  as provided by RESPA for the class

and attorneys fees.


## FIFTH CLAIM FOR RELIEF-VIOLATION OF THE HOMEOWNERS PROTECTION ACT (12

## U.S.C.   SEC. 4701 ET SEQ.) AGAINST CHASE HOME FINANCE LLC


78. Plaintiff repeats and  realleges all the allegations of Paragraphs 1 through 77.


79. As  servicer of Ms. Scruggs home loan, defendant Chase Home Finance LLC had an obligation to

annually make the following disclosures regarding Private Mortgage Insurance to Ms. Scruggs under 12

U.S.C. Sec. 4703 (b), 12 U.S.C. 4703 (c) and 42 U.S.C. 4703 Sec. (d)

(3) Annual disclosures If private mortgage insurance is required in connection with a residential mortgage
transaction, the servicer shall disclose to the mortgagor in each such transaction in an annual written
statement -
(A) the rights of the mortgagor under this chapter to cancellation or termination of the private mortgage
insurance requirement; and (B) an address and telephone number that the mortgagor may use to contact the
servicer to determine whether the mortgagor may cancel the private mortgage insurance. (4) Applicability
Paragraphs (1) through (3) shall apply with respect to each residential mortgage transaction consummated
on or after the date that is 1 year after July 29, 1998. (b) Disclosures for existing mortgages If private
mortgage insurance was required in connection with a residential mortgage entered into at any time before
the effective date of this chapter, the servicer shall disclose to the mortgagor in each such transaction in an
annual written statement - (1) that the private mortgage insurance may, under certain circumstances, be
canceled by the mortgagor (with the consent of the mortgagee or in accordance with applicable State law);
and (2) an address and telephone number that the mortgagor may use to contact the servicer to determine
whether the mortgagor may cancel the private mortgage insurance. (c) Inclusion in other annual notices
The information and disclosures required under subsection (b) of this section and subsection (a)(3) of this
section may be provided on the annual disclosure relating to the escrow account made as required under the
Real Estate Settlement Procedures Act of 1974 [12 U.S.C. 2601 et seq.], or as part of the annual disclosure
of interest payments made pursuant to Internal Revenue Service regulations, and on a form promulgated by

the Internal Revenue Service for that purpose. (d) Standardized forms The mortgagee or servicer may use standardized forms for the provision of disclosures required under this section, which disclosures shall relate to the mortgagor's rights under this chapter.

80. Defendant Chase Home Finance LLC has failed to make the annual disclosure to Ms. Scruggs in calendar years 2008 and 2009 required by 12 U.S.C. Sec. 4703 . See Exhibit R.

81. There are common questions of law or fact that predominate as to whether these practices violate 12 U.S.C Sec. 4703 and 12 U.S.C. Sec. 4707

a) Whether Chase Home Finance LLC and its representatives have a pattern and practice of failing making the disclosures required by12 U.S.C. 4703;

b) Whether J.P Morgan Chase and its Chief Executive Officer Jamie P. Dimon and its General Counsel are aware of the custom and practice of Chase Home Finance LLC failure to make the disclosures, or in the exercise of due diligence, should be aware of the practice.

82. Ms. Scruggs proposes to represent one Plaintiff Class consisting of all persons in Missouri who Chase Home Finance LLC did not make the required disclosures under 12 U.S.C. Sec. 4703 in the State of Missouri from January, 1, 2008 to December 31, 2009.

83. The Plaintiff Class consists of many hundreds if not thousands of individuals, and the members of Plaintiff Class are so numerous that it is impractical to bring all of them before the Court in this action. Moreover, each member of the proposed Plaintiff Class is in such a financial condition that each member of the class would find it impossible, if not improbable to obtain counsel and would be impractical for each borrower to bring an individual action.

84. Proposed lead counsel for the Plaintiff class, L. Steven Goldblatt is experienced and knowledgeable concerning this type of litigation, having prosecuted over 20 civil and criminal cases under the MMPA as an Assistant Attorney General for the State of Missouri, having defended class action litigation in state and federal court. Further, L. Steven Goldblatt has successfully negotiated Loan Modification Agreements with other lenders, has sufficient resources to represent the Class, and has presented a seminar on Loan

Modifications to the Commercial Law Committee of the Missouri Bar, and will fairly and adequately represent the interests of the proposed Plaintiff Class.

85. Common questions of law and fact common to the members of the proposed Plaintiff Class predominate over any questions of fact affecting any individual member of the proposed Plaintiff Class, and a class action is superior to other available methods for the fair and efficient resolution of this controversy. No unusual difficulties are anticipated in the management of this case as a class action.

Wherefore Plaintiff prays that a class be certified under Fed. R. Civ. Pro Rule 23, that L. Steven Goldblatt be appointed lead counsel, and for statutory damages of $2000.00 per class member and an additional amount of $2000 per class member and an additional $500,000.00 as provided by Home Owners Protection Act for the class and attorneys fees and costs.

### SIXTH CLAIM FOR RELIEF-ACCOUNTING AGAINST CHASE HOME FINANCE LLC

87. Plaintiff repeats and realleges all the allegations of Paagraphs 1-86.

88. There is a dispute concerning the amounts Ms. Scruggs owes Chase Home Loans LLC under the note and first deed of trust secured by the residence at 2065 Carefree Lane.

89. Given due regard to the payments made by Ms. Scruggs, the amounts owed by Defendant Chase Home Finance LLC, Plaintiff Scruggs requests an accounting of what, if any amounts are owed by Ms. Scruggs under the note and deed of trust, and what if any amounts are due to Defendant Chase Home Finance LLC by Ms. Scruggs.

Wherefore under this Sixth Claim for Relief Plaintiff Scruggs requests an accounting.

Respectfully Submitted, this 26th day of December, 2009

L. Steven Goldblatt Esq. S/S  EDMO #68327
The Goldblatt Law Firm
8000 Bonhomme
Suite 214
St. Louis, MO 63105
Tel:314-288-8455
Fax:314-569-4010
EMAIL:Lsgold7@swbell.net